**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JACQUELINE M. ROUSE,

                                        Plaintiff,

                v.                                                    No. 04-CV-791
                                                                              (FJS/DRH)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

**APPEARANCES:**                          **OF COUNSEL:**

McMAHON, KUBLICK & SMITH, P.C.      JENNIFER GALE SMITH, ESQ.
Attorney for Plaintiff
500 South Salina Street
Suite 816
Syracuse, New York 13202

HON. GLENN T. SUDDABY              WILLIAM H. PEASE, ESQ.
United States Attorney for the        Assistant United States Attorney
   Northern District of New York
Attorney for Defendant
100 South Clinton Street
Post Office Box 7198
Syracuse, New York 13261-7198

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

        Plaintiff Jacqueline M. Rouse ("Rouse") brought this action pursuant to 42 U.S.C. §

405(g) seeking review of a decision by the Commissioner of Social Security

("Commissioner") denying her application for benefits under the Social Security Act.  Rouse

moves for a finding of disability and the Commissioner cross-moves for judgment on the

_____

        [1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

pleadings. Docket Nos. 8, 13. For the reasons which follow, it is recommended that the Commissioner's decision be affirmed and Rouse's motion for a finding of disability be denied.

## I. Procedural History

On October 7, 2002, Rouse filed an application for disability insurance benefits pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. T. 47-49, 67.[2] That application was denied after the initial determination and following reconsideration. T. 18-21. Rouse requested a hearing before an administrative law judge (ALJ), T. 22, which was held before ALJ Steven A. DeMonbreum on November 21, 2003. T. 181-222. Rouse was represented by counsel. T. 24. In a decision dated April 30, 2004, the ALJ denied Rouse's claims. T. 11-16. On May 27, 2004, the Appeals Council denied Rouse's request for review, thus making the ALJ's findings the final decision of the Commissioner. T. 4-6. This action followed.

## II. Contentions

Rouse contends that the ALJ erred when he (1) failed to give adequate consideration to the opinion of her treating physician; (2) found she retained the residual functional capacity (RFC) to perform sedentary work; and (3) failed properly TO consider her subjective complaints of pain. The Commissioner contends that there is substantial evidence in the record to support a finding that Rouse was not disabled.

---

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.  Docket No. 7.

### III. Facts

Rouse is now thirty-three years old, previously worked as a secretary and cashier and has an associates degree. T. 40, 47, 189. Rouse alleges that she became disabled on December 4, 1998 due to vestibular neuritis,[3] vertigo, nausea, fatigue, vision problems, and irritability. T. 41, 57-58, 191-92.

### IV.  Standard of Review

### A. Disability Criteria

A claimant seeking disability benefits must establish that "he [or she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2003).  In addition, the claimant's impairments must be of such severity that he or she is not able to do previous work or any other substantial gainful work considering the claimant's  age, education, and work experience, regardless of whether such work exists in the immediate area, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work. 42 U.S.C. § 1382c(a)(3)(B) (2003).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 416.920, to evaluate SSI disability claims:

First, the [Commissioner] considers whether the claimant is

---

[3] Inflammation of the vestibular nerve which "is concerned with the control of the equilibrium of the body." 6-V SCHMIDT'S ATTORNEYS' DICTIONARY OF MEDICINE 1857, 2746 (2004).

currently engaged in substantial gainful activity.  If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.  Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. § 416.920 (2005).

The plaintiff has the burden of establishing disability at the first four steps.  Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000).  However, if the plaintiff establishes that an impairment prevents him or her from performing past work, the burden then shifts to the Commissioner to determine if there is other work which the claimant could perform.  Id.

**B. Scope of Review**

The reviewing court must determine if the commissioner has applied the proper legal standards and if the decision is supported by substantial evidence.  Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw, 221 F.3d at 131 (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971)

4

(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000). The ALJ must elaborate specific factors to allow the reviewing court to determine whether substantial evidence supports the decision. Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984). If the Commissioner's finding is supported by substantial evidence, it is conclusive and on review, the court cannot substitute its interpretation of the administrative record for that of the Commissioner. Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998); Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).

# V.  Discussion

## A. Medical Evidence

In October 1993, Rouse presented to Dr. Charles Woods with complaints of dizziness and vertigo. T. 128. An electronystagmography[4] (ENG) was abnormal with spontaneous left nystagmus.[5] T. 128.  In August 2002, Rouse presented to Dr. Woods with no change in symptomology and the impression was vestibular neuritis. T. 125. Dr. Woods noted that Rouse had compensated quite nicely but continued to have a constant feeling of imbalance and unsteadiness. T. 125. In January 2003, Dr. Woods found that Rouse suffered from chronic imbalance, chronic vestibular weakness neuropathy, and vestibular neuritis. T. 95. Dr. Woods opined that the average frequency of vertigo and severe exacerbation was one-to-two times a week, that Rouse would be precluded from performing

---

[4] The record obtained by "an instrument for recording eye movements induced by electrical stimulation." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 537 (28th ed. 1994) [hereinafter DORLAND'S].

[5] [A]n involuntary, rapid, rhythmic movement of the eyeball." DORLAND'S 1164.

basic work activities during these attacks, and that on average Rouse would likely be absent from work about four days per month. T. 96. The prognosis in March 2003 was stable but with no improvement. T. 95-98, 121-24. Rouse did not suffer from progressive hearing loss. T. 95.

Dr. Mark R. Gacek treated Rouse from October 12, 1993 to April 8, 1996. T. 99-102. in October 1993, Rouse complained of persistent disequilibrium. T. 102. Rouse denied any head trauma or syncopal episodes. T. 102. The diagnosis was right serous labyrinthitis[6] and bilateral vestibular neuritis.  T. 102. An ENG was abnormal with spontaneous left nystagmus, an audiogram was within normal limits, an otolaryngologic examination was normal, and an MRI was negative for multiple sclerosis or tumor faction. T. 101. In March 1994, Rouse stated she was doing well, her external auditory canals, tympanic membranes, and SRTs were normal, and there was no nystagmus. T. 101. In December 1994, Rouse reported that she was doing quite well and only experienced disequilibrium when very fatigued. T. 100. Dr. Gacek opined that Rouse had done well in the recovery and recommended a follow-up in one year. T. 100. Rouse's medications included Valium and Antivert. T. 83. Rouse complained of intermittent dizziness and an ENG in March 1998 was unchanged from the ENG in 1996. T. 99.

In March 1997, Rouse was seen by Dana L. Oviatt, an audiologist. T. 104-111. The impression was uncompensated peripheral vestibular involvement evidenced by significant positional nystagmus, no peripheral vestibular involvement, difficulties with balance, and normal hearing, bilaterally. T. 104. An ENG revealed persistent vertical nystagmus and

_____

[6] Inflammation of the "system of intercommunicating cavities or canals, especially that constituting the internal ear." DORLAND'S 892.

horizontal positional nystagmus. T. 105. Oviatt provided Rouse with a program of habituation exercises and balance retaining exercises to help Rouse cope with her dizziness and imbalance. T. 109.

Rouse was treated by Dr. Steven Alexander and Mary Oot, N.P. from September 22, 1997 until January 1, 2003 as general practitioners. T. 130-65. A CT scan taken in October 1999 was normal. T. 113. In October 2002, Oot opined that Rouse's symptoms of dizziness, nausea, and vomiting frequently interfered with her activities of daily living, that she required assistance in caring for her children, her attacks were unpredictable and unavoidable which made Rouse an unlikely employment candidate. T. 183-84. A physical RFC completed in December 2002 found that Rouse could occasionally lift and carry twenty pounds, could frequently lift and carry ten pounds, could stand, walk, and sit six hours, and was unlimited in use of the upper and lower extremities. T. 114-19.

On December 30, 2003, Dr. Ward W. Stevens, a non-examining physician, reviewed Rouse's medical records. T. 172-80. Dr. Stevens found that Rouse could occasionally lift and carry twenty pounds, could frequently lift and carry ten pounds, could stand, and walk four hours, was limited in work involving hazards, and would average one day a month absence from work. T. 172-80. Dr. Stevens found that Rouse's bilateral vesticular neuritis was non-progressive, that Rouse had normal hearing, that Rouse had compensated nicely, that further treatment was not required, and that Oot's opinion was not documented by the physical findings. T. 172-75.

**B. Treating Source**

Rouse contends that the ALJ erred when he failed to accord the proper weight to the opinion of Dr. Woods, her treating physician. The Commissioner contends that the ALJ properly considered medical source opinions.

> When evaluating a claim seeking an occupational disability annuity the hearing officer must look at the (1) objective medical facts and clinical findings, (2) treating physician's diagnoses and other medical opinions based on the medical facts, (3) subjective evidence of disability and pain related by claimant, and corroborating or contravening evidence of these conditions, if any, and (4) the claimant's educational background, age, and work record.

Harris v. Railroad Retirement Bd., 948 F.2d 123, 126 (2d Cir. 1991) (citing Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983)).  Rouse contends that the ALJ failed to give adequate consideration to her treating physician's determination of disability.  Under the regulations, a treating source's opinion is entitled to "controlling weight" if the Commissioner "find[s] that [it] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); Shaw, 221 F.3d at 134.  Before discounting the opinion of a treating source, however, the ALJ must provide "good reasons."  Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to afford that opinion: (1) the frequency of examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist; and (5) other relevant factors.  Alder v. Apfel, No. 99-CV-136, 1999 WL 1458368, at *4 n.3 (N.D.N.Y. Aug. 13, 1999) (Mordue, J.) (citing Schaal, 134 F.3d at 504).

8

Here, the ALJ considered the opinion of Dr. Woods that Rouse would need to take unscheduled breaks during the course of an eight-hour workday and would be unable to work approximately four days per month due to the impact of her impairment. T. 15. The ALJ found that in other resepcts Dr. Woods' opinion was not supported by substantial medical evidence of record, Rouse's range of daily activities, and other opinions in the record and, therefore, accorded it little weight. T. 15.  Dr. Woods treated Rouse first in October 1993 for complaints of dizziness and vertigo, she returned in April 1996 and August 2002, and Dr. Woods gave his opinion in January 2003. T. 121-29. These three treatments in ten years were intermittent and infrequent, and there is no evidence that Rouse's symptoms became so severe or worsened to the extent that she sought further and additional treatment from Drs. Woods or Gacek. There was no treatment by Dr. Gacek and one visit to Dr. Woods after Rouse's alleged onset date. The only support that Dr. Woods had for the degree and frequency of Rouse's restrictions were Rouse's subjective complaints of vertigo and dizziness.

In addition, Dr. Woods' opinion was not consistent with Dr. Wood's treatment notes, which indicated that Rouse's symptoms had not worsened, that she was compensating well, and that the prognosis was stable. There was a three-to-four year gap between Rouse's treatments by Dr. Woods, indicating her symptoms were not severe. In addition, during this time, Rouse worked as a secretary from June 1992 to December 1998.

While ENGs were abnormal, other evidence supports the ALJ's findings. In March 1994, Rouse stated that she was doing well, and her external auditory canals, tympanic membranes, and SRTs were normal, and there was no nystagmus. T. 101. In December 1994, Rouse reported that she was doing quite well and only experienced disequilibrium

9

when very fatigued. T. 100. Dr. Gacek, who treated Rouse from October 12, 1993 to April 8, 1996, opined that Rouse had done well in her recovery. T. 100.  An ENG remained unchanged in 1996. T. 99. A CT scan taken in October 1999 was normal. T. 113.

Rouse also contends that the ALJ failed adequately to weight the opinion of Mary Oot, a nurse practitioner. Oot opined that Rouse's symptoms of dizziness, nausea, and vomiting frequently interfered with her activities of daily living, she required assistance in caring for her children, and her attacks were unpredictable and unavoidable, which made Rouse an unlikely employment candidate. T. 183-84. The ALJ found that because Oot was not a physician and because her opinion addressed an issue reserved to the Commissioner, her opinion was entitled to very little weight. T. 15. In addition, a nurse practitioner is not an acceptable medical source and such opinion is not necessarily entitled to the same weight as a treating physician.  See 20 C.F.R. § 416.913 (d)(1); Colondres v. Barnhart, No. 04-CIV-1841 (SAS), 2005 WL 106893, at *6 n. 97 (S.D.N.Y.  Jan. 18, 2005). Moreover, Oot's opinion was based in large part on Rouse's subjective descriptions regarding her daily activities and is not supported by any other objective evidence.

Therefore, substantial evidence supported the ALJ's findings in this regard and it is recommended that these finding be affirmed.

## C. RFC

Rouse contends that the ALJ's conclusion that she retained the RFC to perform sedentary work is not supported by substantial evidence. The Commissioner contends that substantial evidence supports the ALJ's finding.

RFC describes what a claimant is capable of doing despite his or her impairments.

20 C.F.R. § 404.1545(a) (2005).  "RFC is determined by considering all relevant evidence consisting of, inter alia, [the claimant's] physical abilities, symptoms including pain . . . [or other] limitations which go beyond symptoms."  Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (Hurd, J.) (citing 20 C.F.R. §§ 404.1545, 416.945 (1991)).  "RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations."  Smith v. Apfel, 69 F. Supp. 2d 370, 378 (N.D.N.Y. 1999) (Hurd, J.) (citing LaPorta v. Bowen, 737 F. Supp. 180, 183 (1990)).

In assessing RFC, the ALJ must make findings specifying what functions the claimant is capable of performing, not simply making conclusory statements regarding a claimant's capabilities.  Martone, 70 F. Supp. 2d at 150.  RFC is then used to determine whether the claimant can perform his or her past relevant work or other work in the national economy.  State of N.Y. v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); see generally 20 C.F.R. §§ 404.1520, 416.960 (2005).

The ALJ found that Rouse retained the RFC to perform sedentary work[7] that did not require climbing, balancing, or exposure to hazards. T. 16. The vocational expert testified

---

[7] Sedentary work requires a claimant be capable of

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a); Kamerling v. Massanari, 295 F.3d 206, 208, n.2 (2d Cir. 2002). "[S]edentary work 'generally involves up to *two hours of standing or walking* and *six hours of sitting* in an eight- hour work day.' "  Curry v. Apfel, 209 F.3d 117, 123 (2d Cir.2000) (quoting Perry v. Chater, 77 F.3d 41, 46 (2d Cir. 1996)) (emphasis in original).

that an individual whose age, education, and work history were similar to Rouse's, and who was limited to sedentary work that did not require climbing, balancing, or exposure to hazards, would be able to perform a significant number of jobs in the national and local economies. T. 218. Examples were an information clerk and general clerk. Id.  While the vocational expert testified that if Rouse were likely to miss four days of work a month or that if she needed to take unscheduled breaks, there were few or no jobs in the national economy that would make these accommodations. However, this was based on the restrictions given by Dr. Woods, to which the ALJ gave little weight and, therefore, did not apply to his RFC findings.

This finding is supported by substantial evidence other than the opinion of Dr. Stevens, a non-examining physician. A CT scan and an MRI were essentially normal, Rouse's symptoms had resolved and were stabilized, treatment was conservative, there was no hearing loss, Rouse reported in February 1996 that her dizziness was intermittent, she was active, and participated in aerobic classes regularly, and ENGs remained unchanged. T. 95, 101, 125, 172-75. In March 1994, Rouse stated that she was doing well, her external auditory canals, tympanic membranes, and SRTs were normal, and there were no nystagmus. T. 99-102,113, 125. A physical RFC completed in December 2002 found that Rouse could occasionally lift and carry twenty pounds, could frequently lift and carry ten pounds, could stand, walk, and sit six hours, and was unlimited in the use of her upper and lower extremities. T. 114-19. Dr. Stevens found that Rouse could occasionally lift and carry twenty pounds, could frequently lift and carry ten pounds, could stand, and walk four hours, was limited in work involving hazards, and would average one day a month absence from work. T. 172-80. Drs. Woods and Gacek found that treatment was no longer

necessary.

Thus, substantial evidence supported the ALJ's RFC finding and, therefore, it is recommended that this finding be affirmed.

### D. Subjective Symptoms

Rouse contends that the ALJ did not properly consider her subjective complaints. The Commissioner contends that the ALJ properly considered Rouse's subjective complaints and alleged limitations.

"Subjective complaints of pain may serve as the basis for establishing disability, even where the pain is unsupported by clinical or medical findings, as long as an underlying impairment can be 'medically ascertained.'" Knapp v. Apfel, 11 F. Supp. 2d 235, 237 (N.D.N.Y. 1998) (McAvoy, C.J.) (citations omitted); Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999).  An ALJ has an obligation throughout the disability evaluation process to consider complaints of pain.  Martone v. Apfel, 70 F. Supp. 2d at 150.  When rejecting claims of disabling pain, the ALJ must do so with sufficient specificity to enable the courts to make an independent evaluation of that decision. Id. It is important to remember, however, that pain is a subjective concept "difficult to prove, yet equally difficult to disprove" and courts should be reluctant to constrain the Commissioner's ability to evaluate pain.  Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983).

A finding that a claimant suffers from disabling pain requires medical evidence of a condition that could reasonably produce pain, see 20 C.F.R. §§ 404.1529(a)-(b), 416.929(a)-(b) (2005), but does not require objective evidence of the pain itself or its degree.  Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979); Chandler v. Callahan, No. 96-

13

CV-1790, 1998 WL 99384, at *5 (N.D.N.Y. Feb. 23, 1998) (Pooler, J.); see also 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). The pain must be properly evaluated, considering the applicant's credibility and motivation as well as the medical evidence of impairment eventually to reach an independent judgment concerning the true extent of the alleged pain and the degree to which it hampers the applicant's ability to engage in substantial gainful employment.  See Marcus, 615 F.2d at 27.  In evaluating a claimant's complaints of pain, an ALJ must consider several factors pursuant to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), which essentially codify Social Security Ruling 88-13:

> (i)  [The claimant's] daily activities;
>
> (ii)  The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
>
> (iii)  Precipitating and aggravating factors;
>
> (iv)  The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;
>
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;
>
> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Rouse testified that she suffered from fatigue, vertigo, difficulty concentrating, nausea, that stress and movement increased her symptoms, that the only way to relieve symptoms was to lie down, and that the medication helped to control but did not completely alleviate her symptoms. T. 190-98. The ALJ found that while the record documented

14

bilateral vestibular neuritis which could produce some work-related restrictions, it did not support the extent of the limitations that Rouse claimed. T. 14. This finding is supported by substantial evidence in the record.

Rouse testified that she had two young children, aged four and two that she cared for, and while she needed help, her mother-in-law, her mother, and her husband all worked at other jobs. T. 196, 200-01. Rouse testified that she prepared easy meals, that she did light housework on good days, could not do any activities that required significant head movement, that she did grocery shopping in small trips three times a week, and she vacationed in New Jersey which required a 4½ hour car drive. T. 203-07. Rouse stopped work in December 1998 due to pregnancy and had a baby in 1999. T. 189.

While Rouse testified that her symptoms worsened after giving birth, there are no records that she sought continued treatment for these symptoms and the records do not reflect a report to a treating source that her symptoms had worsened. T. 190. Rouse had a driver's license with no restrictions and testified that she drove only one-quarter of a mile three times a week to the grocery store and to bring her child to pre-school. T. 192, 205.

There is no evidence that Rouse's symptoms became so severe or increased to the extent that she sought frequent treatment from Drs. Woods or Gacek, who are specialists. There was no treatment by Dr. Gacek and only one visit to Dr. Woods after Rouse's alleged onset date. In March 1994, Rouse stated that she was doing well, her external auditory canals, tympanic membranes, and SRTs were normal, and there was no nystagmus. T. 101. In December 1994, Rouse reported that she was doing quite well and only experienced disequilibrium when very fatigued. T. 100. Dr. Gacek opined that Rouse had done well in her recovery. T. 100. In February 1996, Rouse reported that her dizziness was

15

intermittent, and  that she was active, and participated in aerobic classes regularly.

Substantial evidence supported the ALJ's finding here.  Accordingly, it is recommended that this finding be affirmed.

## VI. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the decision denying disability benefits be **AFFIRMED** and Rouse's motion for a finding of disability be **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Secretary of HHS, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:  January 3, 2006
        Albany, New York

David R. Homer

United States Magistrate Judge